Thank you, Your Honor. J. Minister, on behalf of David Kent and OilPro.com, this is a trade secret case where 134A, 004 of the Texas Uniform Trade Secret Act, which is TUTSA, is the principal issue. I am going to address that issue as well as the lack of secrecy when there is no nondisclosure agreement with customers, and then last, the $3.3 million restitution payment, which was not applied by the district court as an offset. Those are the three issues I'll address. 134A, 004, is clear. A plaintiff in a trade secret case under TUTSA can recover damages. The question in this case is where a plaintiff has no damages and admits that, where their damage theory is value, can they recover damages when there is no decrease in value? What the plaintiff in this case did, and it's an unusual case, is the plaintiff made a choice. I think the choice was because they were not satisfied with the amount that Judge Cote in the criminal case ordered in restitution, and they feared the offset, whatever the motive. The plaintiff made a choice not to seek reasonable royalty, which is the statutory remedy when a plaintiff has no loss or no damage. The plaintiff also sought and chose unjust enrichment, which the jury found was zero. Counsel, where are we if the restitution here wipes out the damage recovery? Well, they did recover it. What is the posture of the case if we conclude that the restitution, I ask that because the restitution orders that are put to the jury, able to put to the jury by the district judges, persistently ask plaintiffs, did the plaintiffs, plural, and the submissions made to the department to determine the restitution orders here really describe a basic offense, if you will, and So that's my question to you. Where are we, if that's true, what's left of the case? Nothing, Your Honor. We believe the court should have applied the offset and entered a take-nothing judgment. This gentleman, Mr. Kent, paid a heavy price for a huge mistake. He paid $3.3 million to the company that DHI and Rigzones General Counsel, who was Rigzones General Counsel and DHI's General Counsel, wrote to Judge Cote and said, this is where you should send the payment. And he collectively defined the victim as one victim, DHI. What is sought in this case is a windfall. In the order, in the restitution order, if there were two victims, you would have seen a percentage for each victim, but you see one percentage, or no percentage, actually, because there's only one victim listed. And that's because it included both. And the loss determination, while it's different in the criminal case than the touch-the-damage remedy, the loss determination was based on the value of the resumes. So you have essentially, obviously, criminal loss determinations different than the TUTSA statute, but they're both based on the value of the resumes. In the civil case, does that answer that question, Judge Higginbotham? In the civil case, the question is whether damages, that's the text of 134A, and I want to emphasize one thing that I think is obvious, but it has the, there is an effect where you have a uniform statute that's been developed over 50 years that is an effect throughout the states, as well as in the federal government, where the damages recoverable include your actual loss, your unjust enrichment, and if you have no damages, as there is in this case, no damages, and you have no unjust enrichment, as the jury found, and it is not contested in this case. There is another method, reasonable royalty. The plaintiffs chose not to seek reasonable royalty, and that is absolutely clear. What is unclear is what they actually seek. You can't tell from their briefing. I've worked on this case for six years. I don't know. This is an actual loss case, but they do everything they can to tell you that they saw actual loss. They, they got it. What about the value of the trade secret? The value of the trade secret? The value of the trade secret could only be actual loss, could only be, for two reasons. First, this jury found that the value of the trade secret gained by David Kent was zero dollars. There's a jury finding. It is uncontested. Number two, conceptually. Are you talking about the RICO finding? No, no. In the trade secret claim, question, it's the damages question, second question is the unjust enrichment claim. It's defined as broadly as the court can get, and the definition comes from both the Southwestern Energy case, which is the Texas Supreme Court case, as well as what this court used in the university computing cases. And Judge Wilson, it's the benefits, advantages, and profits gained by David Kent. And the jury found zero dollars. And if you go back to university computing, what university computing says is that the value of the trade secret to the defendant takes two forms. It takes unjust enrichment, which this jury found to be zero, and that is not contested. And second, reasonable royalty, which this plaintiff chose not to seek. So you're down to a question of whether this judgment for $3 million, where there's already been a payment for $3 million, is an actual loss or a damage. The text of the Tutsis says damages for misappropriation, and then it says in the second sentence, actual loss and unjust enrichment can be recovered simultaneously as long as there's no overlap. Your position is that the value that a prudent investor would have paid for the asset, the value of the trade secret, to the extent it was cognizable under the common law, Tutsi preempted that, and now what's under the statute is all we've got. In other words, those categories are exclusive. So the common law is the same as Tutsi, which is the value of the trade secret. What someone would pay for the trade secret is only a damage if you've destroyed that value. Now, if the defendant receives a value, that's a different value. Go back to the question that the jury was asked in A, in what I call the actual loss question. It's a question about what someone would pay for the trade secret. That means they're the one person on earth that will hold that trade secret. They're not a licensee. So that value is huge, whereas a value to the defendant, an unjust enrichment, Judge Wilson, would be the value of being the second person. So you don't have exclusive use. It's a much lower value. And it's one of the key points in our brief, which is if this judgment stands, it unends. It undoes Tutsi. The damages remedy, no one would ever seek reasonable royalty. But the damages remedy says it includes these. It doesn't say it is limited to these. And I agree. It's limited to damages, Your Honor. So the question goes back to damages. Can you recover damage based on your value if every single executive testified there was no change in value? Look at the Wellogix case. Wellogix was— Okay. So you're not saying that what a reasonably prudent investor would have paid is not a damage under Tutsi. You're just saying it didn't occur here. Yes. So Wellogix— The sufficiency of the evidence argument? Yes. Okay. Because I'm not sure that I had understood that that was the core of what you were saying. The core of the evidence is that every single witness said there was no change in value of the trade secret. They continued to use their website. They continued to sell the same. They lost no customers. They lost no money. They never had any disruption. Right. But you're not saying that this question, whatever, A, 1C, A, was an improper question. You're just saying, in general, you're just saying in this case, because they didn't—it wasn't like how to make Coca-Cola was put out in the world and now every company is making Coca-Cola so the trade secret's gone. It's not that case. It's not. So it's just like Wellogix. In Wellogix, you had a $28 million pre-tort value. There was a lot of argument about whether the post-tort value of zero was admissible. It went from $28 million to zero. It was destroyed. And so that was a proper case where damages would be the value of the trade secret because there was evidence that the value went from $28 million to zero. In this case, it went nowhere. And so you're absolutely right that under the common law and under TUTSA, where there is a complete destruction of value, the 100 percent full value could be a damage measure, just not in this case. You could have 50 percent less value and then you could ask for a loss of value. In this case, they didn't even ask for loss of value. They asked for 100 percent total value when all of their witnesses admitted no change in value. And the unjust enrichment is what potential avoided costs because my client might have avoided some costs. The evidence at trial was it was nominal. The jury found zero dollars gained by Mr. Kent. His company, oilpro.com, which was also a defendant, was dismissed. So we don't know what the jury would have found on that. I'm going to turn to the issue of the trade secrets quickly. Secrecy is a core aspect of trade secrets. You do have cases where maybe employees or directors, people that have a relationship of confidence, don't have a nondisclosure agreement. But where the cases depart is where you have counterparties, meaning customers, people that are not part of the entity. They don't work for them. They're not independent contractors. They are counterparties. There is no nondisclosure agreement here with the actual users. So imagine the Coke formula that is literally accessible to tens of thousands of people across the world who don't sign a nondisclosure agreement. And what the plaintiffs say is their restriction is buried in fine print on a website that no one signs. Rather, they're referred to it. And most importantly, when you use the website, you don't have to click on something to say, I agree to these terms. So their other restriction they refer to is a password and a username. And we all use those sort of usernames and passwords all the times if we get something from the Wall Street Journal or the Washington Post or whatever we look at every day. Those are not what you would keep for secrecy. And the last on restitution, there is a common law offset right. The appellate, my client, David Kent, paid $3.3 million. It was a plea bargain. He served his sentence. He's paid an incredibly high price as a result of an enormous mistake. We didn't even have the ability to have a hearing, but it's to determine how that offset was determined and where the money went. The $3.3 million was for the very same damage theory, which is not a damage theory, that they saw. So did we demand of the district court the fact findings on that? I don't think the fact finding is necessary, Judge Hickenbotham, because I think we the $3.3 million is clearly more than. I want to be completely open with the court. The record shows that the defense lawyer in the case, Mr. Cogdell, testified that the plaintiff was the victim and that there should be an entire offset of $3.3. But there was a letter from the U.S. attorney to Judge Coate in computing the $3.3 that said $2.9 was for value of the resumes and $400,000 was for something else. I don't think it should be remanded. I think the record is clear enough for this court. If I could, one quick question about RICO. Yes. Jury found that Mr. Kent was involved in RICO activity, but then the jury awarded zero damages. So, what do we do with the district court's decision about . . . the district court declined to award attorney's fees even though the statute said that's mandatory. So, is the district court correct in denying? Was there a RICO injury or was the zero damages not necessarily exclusive of an injury that would have triggered the attorney's fees award? The district court was completely correct. No disrespect to Your Honor, but . . . and I'll explain. You're incorrect. In the sense that what the jury found in the second question was no injury and no damage. Here's why. RICO is like the Clayton Act. To have standing, you have to have injury. And what . . . and you can have a separate question on standing. Some courts put . . . some courts in their jury instructions put it in the violation, not the Eleventh Circuit, which is what the Fifth Circuit tells us to go follow. The Fifth Circuit website cites the parties to the Eleventh Circuit. The plaintiffs asked for that charge. They did not object to the injury component, standing, being in the second question on damages. But you're in 3D. Yes, Your Honor. And it does reference injury as well as violation, you know, whether it caused injury and then it references damages. So, it's a little confusing. Well, so to have RICO injury, you have to have injury caused by the RICO acts. And the jury found there was no RICO injury caused by the RICO . . . caused by the . . . by the predicate act. And they found no damage. The definition is in the damage question as opposed to the violation question. And as a result, there's a jury finding that there is no injury. I mean, they found liability. And they found no injury. They found there was no proximate cause of the copying of the resumes from the resume database. So, well, okay. I mean, it's a little hard to say that there was a no answer to something that's like a six-page question. They say yes. So, in Question 1 . . . That's okay. In Question 1, injury or damage is not mentioned anywhere. Well, that's the gravamen of my question. And look, it's not the first time I've been incorrect about something. But Question 3B says, what is the amount of damages that was approximately caused? The jury says zero. But then the question also says, if you find that David Kent violated RICO . . . They did. You must decide whether that violation caused an injury to plaintiffs. And so, the question, I guess, is, is the zero verdict therefore preclusive of attorney's fees? Or is the zero verdict effectively like, we found the violation, but it's nominal or we're not awarding damages. But the attorney's fees still triggered. That was my question. It's preclusive of attorney's fees because there's no standing. There's no RICO injury. The injury component, the definition, which is the injury or damage to the plaintiffs or their business or property caused by the predicate acts. And that's in Question 2. It's in the instruction. And they found zero. Thank you for indulging me. Okay. Well, thank you. You've reserved time for rebuttal. And we'll now give Mr. Street a chance. Thank you, Your Honors. May it please the Court. The jury's conscientious work in this case should be affirmed. But the denial of RICO attorney's fees should be reversed and remanded for the determination of the amount. What's your answer to this six-page question that they say doesn't matter and the one-page question that does? This Court has been crystal clear in cases from Ciambra, Dukok Jacks, and Funeral Consumers Alliance that once a jury or a judge finds RICO liability, then attorney's fees are mandatory. Injury is inherent in violating RICO. Now, the jury found here, if you look at the question, it found zero amount of damages. The question is, what amount of damages did you find to be— Was that tantamount to a finding there was no injury, even though there may have been a RICO violation? No, because I think this Court's cases make clear that sometimes in RICO and Clayton Act cases, which sort of go hand in hand, as you know, it's difficult to quantify an amount of damages. But all that needs to be proved is fact of damage. We think the RICO liability finding that Mr. Kent broke into our computer system and hacked and stole our database, that's inherently injurious, but we also have undisputed record evidence that as a result of that hacking, we had to retain mandate to remediate and investigate that hacking, and that cost us at least hundreds of thousands of dollars. So it's undisputed on the record. Why didn't the jury find that? Well, it could have. I mean, we could speculate as to why it didn't. It may be because they had already awarded $3 million plus on the other claims, and so they didn't feel like they should award additional amounts. But you see what I'm grappling with, and maybe Judge Haynes is also. I'll speak just for me, though. I mean, the jury said zero, and the instruction under Question 3B mentions, it says something about the injury, whether it caused an injury, and if so, what are the damages approximately caused? And the jury said zero. So did they say zero injury and therefore no fees, or did they say, well, nominal damages? Kind of hard to think nominal damages if it's zero as opposed to a dollar or hundreds of thousands of dollars. So what do we make of it when it's zero? But, I mean, is there an antitrust—I mean, a RICO injury, even though the jury found there was RICO violation? So I think Judge Hittner got it exactly right here, which is that the jury's answers do not resolve the question on their face of whether there is a RICO injury. The question that Your Honor referred to does have language about the injury and the damages question. You're absolutely right. But the actual question that was asked is what amount of damages were approximately caused? And as I've mentioned, this Court's long line of cases have held that even if you cannot quantify a particular amount, even if the jury or the judge renders a zero compensatory verdict, the question then is the Court must look at the record and evaluate the record and determine whether there's— It's great that counsel, you—what is the amount of the damages? Yes. But it's apparent, if any. So that seems to reach a little further when you're having emphasis upon the only determining an amount and leaving that there's some injury there, but they can't—it's not determinable. What do you do with it, if any? Does that qualify or soften that, your argument, or not? I think they found that there were zero amount of damages. That's all I think we could say based on that. I don't think— Approximately caused. I'm sorry? Approximately caused. Approximately caused. A little harder than just plain old caused. Yes, that's true, Your Honor. And I think the Funeral Consumers Alliance case is pretty interesting here because the Court found that it looks like there are zero compensatory damages, but it reversed and remanded for a trial. And the Court said very clearly, if you can prove a RICO violation, you will get attorney's fees. And that's because RICO and the Clayton Act were enacted for the purpose of it's often very difficult to quantify the amount of damages. And that's all we think that question asked about. And if I could just turn to restitution, just to answer Judge Higginbotham's question, and then I will pivot to the damages issue on Tuts, of course, subject to this Court's questioning. I think Judge Higginbotham suggested that all of the jury questions here were submitted on behalf of both plaintiffs? No. Oh, I'm sorry. Then I misunderstood your question. It's about the criminal case being on behalf of the jury. I see. So, of course, the Tuts damages question here was only on behalf of RIGZO and the restitution order and the criminal judgment, which Mr. Kent consented to. He pleaded. He allocated to that on the record. And he did that after this civil suit had been filed by both DHI and RIGZO. So he agreed to a plea agreement that listed DHI as the only victim. And that's what he's trying to do. Does that also affect the amount? Because you all asked for more at trial, more damages, and didn't get the total that you asked for. Does that matter in assessing the restitution? In other words, put another way, it was like almost a settlement, if you will, at the criminal level. You all asked for more than that. You didn't get it. Does that matter in this whole analysis in looking at the restitution? No, Your Honor. I think this court should do what the district court did, which was take the restitution order and the plea agreement as it comes. It should look at the face of the criminal judgment and the restitution order, which lists DHI as the only victim. And then it should determine how can that possibly be offset against the jury verdict that went only to RIGZO. And I think that's especially true when you look at the fact, as I mentioned, that Mr. So it doesn't matter that they agreed on that? Well, I think it absolutely. Well, that's why we have some problem with offsetting criminal restitution at all, because it's just such a different process. Let me put it to you this way, Your Honor.  I'm not going to die on the hill of the fact that you could never offset a criminal restitution, but you're absolutely right. This is not something like a civil lawsuit where we come in and we get to bring our evidence of damages. What's important is that Mr. Kent pleaded guilty and allocated to the crime that named DHI as the only victim. And when it came time to try the civil case, we were initially going to put on a claim of TUTSA for both DHI and RIGZO. And Mr. Kent's counsel said, oh, no, RIGZO is the only one that has the trade secret. He made a strategic choice to force us to bring that claim only against RIGZO. And Judge Hintner agreed, and he said, no, I'm not submitting anything on behalf of DHI. They did that for their own strategic reasons that are fairly complicated. But once they decided to go into court and make us press the case only on behalf of RIGZO, I don't see how they can come in and say this court should look behind the face of the restitution order, particularly when there is no evidence whatsoever that RIGZO got a penny of that money from DHI. If they had some evidence, if they had sought discovery on that or gotten some evidence through the discovery process, then maybe we would have a different case. But the court certainly should not ignore the plaintext of the judgment and the restitution. Why did Mr. Kent pay any money in restitution when he says there wasn't any damages? I guess you would have to ask Mr. Kent's counsel on that one, Your Honor. I just feel like we keep circling. Get into the circle. And I think that does come back to all of Your Honor's questions about the plea, you know, under penalty of perjury, that he committed an act that cost $3 million worth of harm to my clients and yet claim that there is no RIGZO injury on the face of this record. That's perplexing to me. And I understand, of course, the jury found what they found. And that's a strangely worded question in some ways. And we don't know why exactly the jury found it. But to me, that's the common sense way of looking at that question. So getting back to the damages, I guess they're now conceding that the statute does allow the value, but only if the value is totally lost, I guess. I guess is their argument. I think that's their argument, Your Honor. And that was not how I mean, part of their briefing talked about the full value versus the no value. But I thought the focus of it was that the TATSA does not allow this recovery. But if that's not their argument, we can put that aside. So what is your answer to the notion that you should not receive a value when your people still have their, you know, their customers and so forth of these resumes? So let me start by looking at the statute. And I was happy to hear my friend on the other side say that he agreed that TATSA codified the common law. I wasn't sure that was their position. So we can then, of course, look at this court's cases to determine what TATSA allows. And if you look at the text of TATSA, I think it confirms that TATSA does codify what this court has called a flexible and imaginative approach to damages. There's not rigid categories, which my friend wants to suggest. TATSA says, I think Judge Haynes, you mentioned, TATSA says damages, quote, can include these following measures. And then it says, in lieu of damages measured by any other methods, you can get a reasonable royalty. So our reading of the cases is, particularly starting with university computing, university computing actually addresses our situation in some sense. It says, in a case where the value of the trade secret has not been destroyed, then the proper measure of damages is the value of the trade secret to the defendant. Okay? Then you look at this court's decision in Carbo Ceramics and Southwestern Energy from the Texas Supreme Court, and those cases are very clear that the value a reasonably prudent investor would pay for the trade secret is one way to measure the value that the defendant gained. In other words, Mr. Kent— But then how do you square the $3 million and zero? Because they were asked both. Right. So that's a great question. I think what the jury was asked was two species of unjust enrichment questions, two species of what benefit did Mr. Kent receive. The first question was, what was the value a reasonably prudent investor would have paid? $3 million. Mr. Kent received a $3 million asset that he would have otherwise had to purchase from my clients. Then the jury came to the next question, which was, what are the benefits, profits, and advantages Mr. Kent gained? That's more of a traditional derivative, consequential unjust enrichment. He didn't open a company that started selling. Precisely. He did not exploit. The jury found he did not exploit that trade secret to make a bunch of extra profits. So the jury was well within its discretion to find that the value of the trade secret was something that Mr. Kent gained. And then when it said, well, was there anything else? They said no. He didn't do a very good job of using it. He did steal those trade secrets, and they were valued at X. And I think it's important to know— But what about the notion that you can't get that X unless it just wiped it out, my Coca-Cola analysis? There's no case that says that, Your Honor. You will search their brief up and down. You will not see a case that says that. What you will see is cases that say there's a flexible and imaginative approach that lists the reasonably prudent investor metric as— So why not? I mean, if he stole your trade secret and put it under his bed, okay? He went and stole the Coca-Cola, how you make it, and put it under his bed, and there it is. He never used it, never gave it out to the world. What is the damage to Coca-Cola there? Maybe that's not a good analogy, but when I was growing up, that was the thing that everybody— I understand. That's the classic trade secret in some sense. I understand where you're going. So there's different ways of looking at damages, right? There's damage or harm to us. And then there's an unjust enrichment perspective, which is what did Mr. Kent gain by getting the trade secret? So there's two, I think, carboceramics from this court in Southwestern Energy say one way you can look at what the defendant gained is how much value he stole, valued at. In this court, I want to really emphasize this particular case— So even if you put it under the bed, if you stole the Coca-Cola, I'm putting that in quotes, that, you still owe the millions that that might be, again, using that as a historic analogy. Yes, it's one way to measure the value to the defendant. And I want to emphasize that this court has addressed this very issue in the Matter of Amerisciences case, which we cite in our brief, from 2019. And what happened there is the defendant emailed a copy of the distributor list to someone else. So it was a copy. It didn't destroy the value of the existing company. And this court affirmed the jury verdict on the basis of the value that a reasonably prudent investor would have placed on that distributor list. There was no evidence or even discussion that that email destroyed the value. So I think that emphasizes that this court has found, in this scenario, a value based on a reasonably prudent investor. And that is consistent with this court's repeated admonition that damages are supposed to conform to the commercial reality. And even if you have trouble with the general concept of awarding the full amount of damages if you put it under his bed, that's a little different than what we have here. We have a database subscription model. And the specific and undisputed evidence in the record is that my client would never have licensed that to anybody. It would only have sold it outright. So the only way to properly compensate my client for what it would have otherwise gained if Mr. Kent had come in and said, give me those 587,000 resumes, is the actual value of those resumes. As a group, you could also say, well, you know, I mean, these resumes, you can find them anywhere. It's the compilation of them that you all are claiming is meaningful. That's right. And that was included within the jury instruction, tracking the language of Tutsa, is that a compilation can be a trade secret. And he certainly took hundreds of thousands upon hundreds of thousands of these resumes. The CompuLife case, in which Judge Newsom wrote for the 11th Circuit, talks about it can't be that they have to steal the whole database. It's just a substantial portion of the database to exist as a compilation. Otherwise, you're just incentivizing, you know, bad actors to go and take all but one of the resumes or, you know, some . . . Mr. Street, who was the jury compensating in question 4B in their answer? Is 4B the RICO? Yes. Question? It's question 4B under charges. I'll look at it. The misappropriation. Oh, misappropriation of confidential information. That was a claim brought on behalf of DHI and RIGZONE. What sum of money if paid non-cash would fairly and reasonably compensate plaintiffs for their damages, if any, approximately caused by appropriation, if any, the value that a reasonably prudent investor would have paid for confidential information? So that . . . the jury was compensating both of these parties. Right. So that . . . there were two questions? Well, that misreading question, 2B. Yes. So that question is about a different tort, misappropriation of confidential information. I understand that that's a misappropriation. But what's the . . . as I understand it, the difficulties where the owner of the that you can go to this, what a reasonable prudent investor would have paid for it. And that's what this says. Yes, Your Honor. So I think that . . . you're right that that question was submitted on behalf of both plaintiffs. We think that was a proper measure of damages on that question. You had an earlier question in the charge which related to the Texas Uniform Trade Secrets Act. That was . . . that one was the one that was brought only on behalf of RIGZONE. And that also asked the jury the question, what was the value of these trade secrets to a reasonably prudent investor? So we think the way the court sort of prioritizes the case is to look at, first of all, did RIGZONE have a valid TUTSA claim and did it show damages under the flexible and imaginative approach that this court has? Only if the court were to reverse that TUTSA verdict as to RIGZONE would it need to get to the second question about misappropriation of confidential information. Otherwise . . . One of the problems is that when you're a trial judge and you've got a jury sitting there, you try to ask them everything that could possibly meet a jury verdict so that you don't have to do a retrial. But as a result, you have a mix of something that kind of is sometimes hard to square up. So I think that may be part of the problem. I'm not criticizing the judge because I've been a state district judge and I understand that sometimes I asked a question that I didn't think was really in the mix, but I thought better to ask it now than to have a retrial if the Court of Appeals disagrees with me, which sometimes they do. It's been known to happen. But I think Judge Hittner did the right thing and asked that question. But later on, he offset . . . we think what he did was offset the restitution that DHI paid against the award on the misappropriation of confidential information. So that issue is actually not on appeal. That issue only sort of springs forth if the court were to reverse our claim for Tutsa damages on behalf of Rigsdale. And on that point, I do want to just circle back quickly to the case of CarboCeramics that I mentioned, which talks about the value of the reasonably prudent investor as being of value to the defendant. And just page 723, I think, hits the nail on the head. It says, the value of what the defendant has gained as a result of the misappropriation . . . so unjust enrichment, classic definition . . . can be measured by the value that a reasonably prudent investor would have paid for the trade secret. It's hard to get more on point than that. All right, and you've used your time. This is one of those that could take a whole afternoon, but we have limited time. All right, rebuttal. I want to address the three reasons why what he just said is incorrect with respect to claiming that value is unjust enrichment. That seems to be sort of where the plaintiffs have now headed. They admit no actual loss. They admit no reasonable royalty. And they rely on value of a trade secret to claim that's unjust enrichment. The first issue is there is a jury answer that is broadly worded. It follows university computing and the Texas Supreme Court and Southwestern Energy. It says, all advantages . . . not all, but advantages . . . benefits and profits gained by David Kent. It precludes the argument that value is a benefit or an advantage that they get $3 million for. You don't get two questions on the same element. If you had . . . there are . . . If they're inconsistent answers, then don't we have a retrial or something? Because, I mean, these are on the same page. Well, they can't be. Value of the reasonably prudent versus value that he got. And isn't this stealing the Coca-Cola and putting it under the bed? The Coca-Cola formula example is perfectly on point, which is if you steal the Coca-Cola formula and they lose nothing and you gain nothing. Remember, that's the . . . you gain no advantages, benefits, or profits. Then you can get a reasonable royalty. What is important, the second . . . Why can't you get the value of what he took and stuck under his . . . he came in, he found it sitting in wherever it is, and put it under his bed. Why can't you as Coca-Cola recover for that? It's my third reason. I'm going to make it the second, Your Honor. Conceptually, the value of a trade secret, the value of owning something, you are the only owner in the world. If you take it and you have a Coke formula, there are now two people in the world. That is a lower value. That is what reasonable value is for. In fact, if you look at what this court and other courts say are the factors for determining reasonable royalty, value of the trade secret, Judge, is one of the factors. You cannot substitute value for what an investor would pay for the trade secret, for full 100% exclusive value for having the Coke formula under your bed, where you have non-exclusive value, and Coke still has it. Those are two conceptually very different concepts. But more importantly is the jury was asked, what are all the benefits? Did he gain any benefit? Did he gain any advantage? And the answer was none. That is unjust enrichment. University computing says there are two types of value. Again, he went and stole it for revenge and not to open up his own company. But why is that not compensable? He had opened up his own company. But he didn't steal the resumes for that. Yes, he did. He downloaded resumes, took the email addresses, invited the people. They then uploaded resumes. But I'm saying he didn't use, I mean, he used some of the information, but he didn't use the compilation. He didn't post the compilation up, right? No, he didn't post the compilation, but he used the compilation by extracting the resumes to invite people. But that's like using the Coca-Cola formula to make, to create a new kind of Pepsi or something, as opposed to directly using that. But whether someone is going to start their own company or not, they remain a non-exclusive owner, which by definition cannot be the value of a trade secret. One is 100% ownership. Another one is you have non-exclusive ownership. They're completely different. And you don't get there until you look at the, unless you disregard the jury answer on unjust enrichment. Make no mistake, these two questions— You're just saying, these just sound inconsistent by your argument. I mean, if he was using the resumes, posting them up, using the compilation, then you can't say that's zero. No, I'm not saying that, Your Honor. A cannot— I'm sorry, I'm confused by what you're saying. Here's why. A, what I would call their actual lost question, but call it whatever, A, cannot be, it cannot be asking the same question as B on just enrichment, defined broadly. Because B is asking about what is the value to the defendant? What does the defendant get if they take it and they put it underneath their bed while the owner of the trade secret still has it? Value is a different circumstance. It is where one person on earth has it. Those are two different values. That's why value of the trade secret is a factor in determining reasonable royalty, which is the appropriate— should have sought reasonable royalty, but it wasn't enough. And they were worried they couldn't get above $3 million because they had that restitution offset. I do want to address RICO because the requirement on RICO is there has to be proof of injury. In our courts, proof of injury is a jury or a judge finding when the judge is the fact finder. In Siambra and in Ducote, the two cases he cites, the fact finder found that there was $3 million of injury damages. So the notion that you can just sort of cut out the jury trial and say that you don't have to prove injury is wrong. The RICO injury requirement is it has to be an injury to plaintiffs or their business or property caused by the predicate acts. All he focused on was the restitution, the criminal case. What's the problem with that? It was a Computer Fraud and Abuse Act case. The Computer Fraud and Abuse Act is not a predicate act under RICO. So what they had to prove in order to have RICO standing is they had to get a jury finding, a jury finding, not evidence. That's how we get proof of injury is a jury finding. Let me ask you a question. You probably think it's not relevant, but I would like to know. How many jurors did you have in the box? It decreased because of COVID. I think we ended up with seven. We had a four-month interruption. We lost some people. Those are the ones that ought to be compensated. And if you all haven't... I think we've heard your argument. As I said, I could spend the whole afternoon, but that isn't how appellate arguments work. So with that, thank you for your arguments. And I really appreciated all your briefing. It was very interesting. And with that, we will close for today and we will begin back tomorrow at 1 p.m. Thank you.